IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEVEN ANDERSON,            )<br>                             )<br>         Plaintiff,          )<br>                             )<br>  v.                         )<br>                             )<br> GEORGE MILLER, GREG FISHER, )<br> RODNEY ROE, JANE DOE, and   )<br> JOHN DOE,                   )<br>                             )<br>         Defendants.         )<br> _____) | Case No. CV-03-83-S-BLW<br><br>**MEMORANDUM**<br>**DECISION AND ORDER** |

Previously in this case, Defendant Rodney Roe filed a Motion for Summary Judgment (Docket No. 25), which the Court deemed moot when Plaintiff agreed to dismiss Roe from the case. Even though that Motion was no longer pending, Defendants Callahan, Riggs, and Vandeventer treated Roe's Motion for Summary Judgment as a pending motion for summary judgment on Plaintiff's remaining claims. The Court gave notice to the remaining parties that it would reconsider Roe's Motion for Summary Judgment as a pending motion on Plaintiff's claims against Callahan, Riggs, and Vandeventer. Supplemental briefing is now complete.

**Memorandum Decision and Order - 1**

Having considered the record in this case, as well as the arguments of the parties, the Court finds that oral argument on the pending motion is unnecessary. The Court now enters its Order denying the pending Motion for Summary Judgment.

## CONSIDERATION OF MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-

**Memorandum Decision and Order - 2**

moving party.  To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party.  All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby*, 477 U.S. at 252.

To prevail on an Eighth Amendment claim regarding prison medical care, a plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Hudson v.*

**Memorandum Decision and Order - 3**

*McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  *Id.*

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference.  *Farmer v. Brennan,* 511 U.S. 825, 838 (1994).  Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim.  *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  Mere

**Memorandum Decision and Order - 4**

indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980).

**B.     Discussion**

    1.     <u>Defendant Callahan</u>

Petitioner arrived at the Idaho Maximum Security Institution (IMSI) from the Jerome County Jail on November 15, 2002, where he had been staying on a temporary basis to attend a state court hearing in that county. While at the Jerome County Jail, he had seen Dr. David Arthurs. The medical records of Dr. Arthurs, which accompanied Plaintiff on his return to IMSI stated that Plaintiff had a history of low back pain since 1998, and that his pain had gotten worse in the last couple of weeks. Dr. Arthurs noted that Plaintiff had been taking "400 mg of Ibuprofen" that had produced "some slight benefit." Dr. Arthurs recommended an increase to 800 mg Ibuprofen and 1000 mg acetaminophen, both as needed for pain. Dr. Arthurs' impression was that Plaintiff suffered from "muscular ligamentous low back pain," and he questioned whether Plaintiff had a "slightly ruptured disk with some nerve compression." *Exhibit A to Plaintiff's Supplemental Affidavit in Opposition to Summary Judgment* (Docket 64).

Defendant Correctional Medical Specialist (CMS) Callahan was the first

**Memorandum Decision and Order - 5**

medical staff person to see Plaintiff when he returned to IMSI.  Callahan was given Dr. Arthurs' medical report.  He reviewed the report, gave Plaintiff thirty 200 mg Ibuprofen tablets to be taken as needed for pain, and asked Plaintiff to complete a Health Services Request Form (kite).  *See Affidavit of Rodney Roe*, at ¶ 3 (Docket No. 58); *Plaintiff's Supplemental Affidavit*, at p. 3 (Docket No. 64).

Once an inmate completes a Health Services Request Form, it is the job of a CMS or nurse to evaluate Plaintiff's condition to determine whether he needs to be seen by a physician.  *Defendants' Reply to Plaintiff's Supplemental Affidavit in Opposition to Summary Judgment*, at p. 5 (Docket No. 69).  In this case, it appears that CMS Callahan determined that it was enough that Plaintiff had just seen a specialist, and had just been given thirty 200 mg Ibuprofen.  He therefore did not recommend any further action on the Health Services Request Form.  *Id*.

There is nothing in the record suggesting that Callahan told Plaintiff that his Health Services Request Form would not be acted upon.  In fact, Plaintiff believed that the Health Services Request Form was for the purpose of continuing on the same medication recommended by Dr. Arthurs.  *Plaintiff's Supplemental Affidavit*, at p. 3 (Docket No. 64).  Callahan asserts that he was not indifferent to Plaintiff's condition because Plaintiff could have asked for more medication if he needed it.  It is unclear why Plaintiff would have continued to ask for more medication, when

**Memorandum Decision and Order - 6**

he believed that his Health Services Request Form would be acted upon.  In addition, Plaintiff has submitted a fellow inmate's affidavit showing that Plaintiff did ask medical staff for medication, and that he was not given anything further. *See Brian Hill Affidavit, Exhibit F to Plaintiff's Supplemental Affidavit* (Docket No. 64).  When Plaintiff finally saw a doctor in December, Dr. John Noak prescribed 800 mg of Ibuprofen and 100 mg of Tylenol for 90 days, with a follow-up visit in 14 days.  *Defendants' Reply*, at p. 6 (referencing *Exhibit E to Roe Affidavit*) (Docket No. 57).  In other words, there is no question that Plaintiff had a serious back condition and required a much higher dosage of pain medication than had been given him by Callahan.

From these facts, a jury could find that Callahan was deliberately indifferent to Plaintiff's serious back condition.  The amount of pain medication Callahan prescribed did not come close to that prescribed by the specialist, and yet the visit to the specialist was one of the reasons Callahan used to justify his failure to refer Plaintiff to a prison physician.  A jury could find deliberate indifference in just the reduction in the pain medication without considering whether Callahan should have set up a physician visit for Plaintiff.

    2.    <u>Defendant Vandeventer and Defendant Riggs</u>

Plaintiff asserts that he spoke to CMS Vandeventer on and after November

**Memorandum Decision and Order - 7**

17, 2002, because Plaintiff was out of pain medication. He asserts that Vandeventer told him to "concern the matter to medical by way of concern form." For security reasons, medical staff are not permitted to respond to verbal requests for medication. *Roe Affidavit*, at ¶ 5.

Plaintiff filed an Inmate Concern Form on November 21, 2002, but it was not acted upon. Defendant Riggs answered the Inmate Concern Form, telling him to file a Health Services Request Form instead. *Roe Affidavit*, at ¶¶ 4-5. Plaintiff alleges that he submitted a Health Services Request Form on November 22 or 27, 2002, but there is no record of the submission other than Plaintiff's mention of it in his December 15, 2002 Inmate Concern Form. *Exhibit C, Plaintiff's Supplemental Affidavit* (Docket No. 65). The record reflects that Plaintiff next submitted a Health Services Request Form on December 18, 2002. *Id*. at ¶¶ 7-8.

Vandeventer and Riggs both assert that they are not permitted to act upon a verbal request for medication or upon an Inmate Concern Form. However, Plaintiff points out that CMS Wilson responded to his Inmate Concern Form on December 18, 2002, examined him, obtained pain medication for him, and scheduled a doctor's visit, filling out the "Health Care Documentation" section of a Health Services Request Form for Plaintiff. *Plaintiff's Supplemental Affidavit*, at p. 5 (Docket No. 64).

**Memorandum Decision and Order - 8**

Based upon all of the foregoing, the Court concludes that there is a genuine issue of material fact as to whether Vandeventer and Riggs could have actually done something for Plaintiff, akin to Wilson's services. All were Correctional Medical Specialists, apparently with the same authority and duties. Accordingly, the Court will deny summary judgment as to all three Defendants on Plaintiff's claims that they were deliberately indifferent to his painful back condition in November 2002.

Plaintiff and counsel for the parties shall contact Anne Lawron, at 334- 9387, to arrange a judicial settlement conference with the Honorable Mikel H. Williams, United States Magistrate Judge.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Motion for Summary Judgment (Docket No. 25) as to Callahan, Riggs, and Vandeventer is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Request for a Status Report (Docket No. 71) is GRANTED by the issuance of this Order.

IT IS FURTHER HEREBY ORDERED that Plaintiff and counsel for the parties shall contact In-Court Deputy Anne Lawron at 334- 9387, to arrange a judicial settlement conference with the Honorable Mikel H. Williams, United

**Memorandum Decision and Order - 9**

States Magistrate Judge.

DATED: **October 28, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 10**